**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| ATEF MAHMOUD, | § | |
| *Plaintiff,* | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:24-CV-589-P |
| | § | |
| SECRETARY ALEJANDRO | § | |
| MAYORKAS, et al., | § | |
| *Defendants.* | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE REGARDING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

Pending before the Court is a Motion to Dismiss Plaintiff's Complaint and Brief in Support [doc. 12], filed on January 21, 2025, by Defendants U.S. Department of Homeland Security; Secretary Alejandro Mayorkas; Director Irvin Gadson; USCIS;[1] and Ur M Jaddou (collectively "Defendants"). This motion was converted by Order [doc. 17] of this Court into a Motion for Summary Judgment (hereinafter "Motion for Summary Judgment"). Having carefully considered the motion, responses, replies, and all applicable law, the Court, for the reasons set forth below, **RECOMMENDS** that Defendants' motion be **GRANTED**.

## I.    STATEMENT OF THE CASE

On April 18, 2022, Plaintiff Atef Mahmoud ("Mahmoud"), a native and citizen of the Arab Republic of Egypt ("ARE"), was admitted into the United States as a B-2 tourist visa holder. (Pl.'s Compl. at 1, 4.) Subsequently, in March 2023, Mahmoud sought asylum in the United States by filing a Form I-589 Application for Asylum and for Withholding Removal ("Form I-589") with Defendants. (Pl.'s Compl. at 1.) As a basis for his Form I-589, Mahmoud sought asylum out of

---

[1] USCIS refers to the United States Citizenship & Immigration Service. (Plaintiff's Complaint & Writ of Mandamus ("Pl.'s Compl.") [doc. 1] at 1.)

fear that he would be persecuted if he were to return to ARE based on his religion.[2]  (Pl.'s Compl. at 4.)  Mahmoud's asylum application is currently pending in Defendants' Houston Asylum Office and has been pending for approximately two years.[3]  On June 24, 2024, Mahmoud filed the above-styled and numbered action bringing claims under the Mandamus Act and the Administrative Procedure Act ("APA"), requesting this Court compel Defendants to schedule his initial interview and adjudicate his asylum application.  (Pl's Compl. at 13-14.)

As set forth above, on January 21, 2025, Defendants filed a Motion to Dismiss [doc. 12].[4] Although styled as a Motion to Dismiss under Federal Rules of Civil Procedure ("Rule") 12(b)(1) and 12(b)(6), the Court, on April 17, 2025, converted Defendants' motion into a Motion for Summary Judgment pursuant to Rule 12(d).  (Order Converting Defendants' Motion to Dismiss into Motion for Summary Judgment and Providing Plaintiff Additional Time to Respond [doc. 17] at 2.)  The Court converted Defendants' motion because it referenced and cited various outside articles, letters, reports, and websites that Defendants cited in their motion but failed to attach such items to the motion.  (*Id.* at 1.)  On May 21, 2025, Mahmoud filed a Response in Opposition to Summary Judgment.  (Pl.'s Second Resp. at 1.)  Six days later, Defendants filed a reply to Mahmoud's second response.  (Defendants' Reply to Plaintiff's Response in Opposition to Summary Judgment ("Defs.' Second Reply") at 1.)

---

[2] Mahmoud alleges that he faced persecution because of his conversion from Islam to Christianity.  (Pl's Compl. at 3; Plaintiff's Response in Opposition to Summary Judgment ("Pl.'s Second Resp.") [doc. 21] at 2.)

[3] Mahmoud's Form I-589 was received by Defendants on March 23, 2023.  (Pl.'s Compl. at 4.)  While Mahmoud alleges various periods of time have passed since the filing of his application, the Court finds that his Form I-589 has been pending for more than two years.  (*See* Pl.'s Compl. at 4, 12, 13 (alleging more than 3-5 years have passed); Pl.'s Compl. at 22 (alleging one year has passed); *see also* Plaintiff's Response in Opposition to Defendants' Motion to Dismiss ("Pl.'s First Resp.") [doc. 13] at 2 (alleging more than twenty-two months have passed).)

[4] On February 11, 2025, Mahmoud filed his response to Defendants' Motion to Dismiss [doc. 13]. Subsequently, on February 25, 2025, Defendants filed a reply to their Motion to Dismiss [doc. 16].

## II.   LEGAL STANDARDS

### A.   <u>Subject Matter Jurisdiction</u>

"Federal courts are courts of limited jurisdiction" and "[u]nlike state courts, federal courts have no 'inherent' or 'general' subject matter jurisdiction." *Columbraria Ltd. v. Pimienta*, 110 F. Supp. 2d 542, 545 (S.D. Tex. 2000).   Thus, federal courts can adjudicate only those claims authorized by the Constitution and federal statutes.   *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (federal courts "possess only that power authorized by Constitution and statute"); *see also Topuz v. Daum*, No. 4:23-cv-2431, 2024 WL 4282091, at *1 (S.D. Tex. Sept. 24, 2024) ("Without jurisdiction conferred by statute or the Constitution, federal courts lack power to adjudicate claims.").   Cases are presumed to fall outside this limited jurisdiction absent a showing to the contrary by the party asserting that the court has jurisdiction.   *See Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001) (noting that federal courts "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum").   The party asserting that a court has jurisdiction, in this case Mahmoud, bears the burden of establishing subject matter jurisdiction.   *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam) (citation omitted); *see also Sentry Ins. v. Morgan*, 101 F.4th 396, 398 (5th Cir. 2024) (per curiam) (holding that the party invoking federal jurisdiction has "the burden of proving subject matter jurisdiction by a preponderance of the evidence").   Courts have a duty to ensure they possess subject-matter jurisdiction before proceeding with a case.   *See Diagana v. Hummert*, No. H-23-4062, 2024 WL 1743139, at *2 (S.D. Tex. Mar. 20, 2024).

### B.    <u>Summary Judgment</u>

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[A dispute] is 'genuine' if it is real and substantial, as opposed to merely formal, pretended, or a sham."  *Bazan v. Hildalgo Cnty.*, 246 F.3d 481, 489 (5th Cir. 2001).  A fact is "material" if it would affect a case's outcome.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).[5]

In assessing whether summary judgment is appropriate, the Court views evidence in the light most favorable to the nonmovant.  *See Cunningham v. Circle 8 Crane Servs., LLC*, 64 F.4th 597, 600 (5th Cir. 2023).  Although the Court is required to consider only the cited materials, it may consider other materials in the record.  *See* Fed. R. Civ. P. 56(c)(3); *see generally Celotex Corp.*, 477 U.S. at 322 (noting summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law") (internal quotation marks omitted).  Nevertheless, Rule 56 "does not impose on the district court a duty to sift through the record in search of evidence to support a party's opposition to

---

[5] To be entitled to summary judgment on a claim or defense on which the moving parties bear the burden of proof at trial, the movants "must establish 'beyond peradventure all of the essential elements of the claim or defense.'"  *Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*, 878 F. Supp. 943, 962 (N.D. Tex. 1995) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)).  This means that the movants must demonstrate that there are no genuine and material fact disputes and that they are entitled to summary judgment as a matter of law.  *See Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003).  "The court has noted that the 'beyond peradventure' standard is 'heavy.'"  *Carolina Cas. Ins. v. Sowell*, 603 F. Supp. 2d 914, 923-24 (N.D. Tex. 2009) (quoting *Cont'l Cas. Co. v. St. Paul Fire Marine Ins. Co.*, No. 3:04-CV-1866-D, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007)).

When a party moves for summary judgment on claims on which the opposing parties will bear the burden of proof at trial, the moving party can meet its summary judgment obligation by pointing the court to the absence of admissible evidence to support the nonmovants' claims.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once the moving party does so, the nonmovants must go beyond their pleadings and designate specific facts showing there is a genuine issue for trial.  *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).  An issue is genuine if the evidence is such that a reasonable jury could return a verdict in the nonmovants' favor.  *See Anderson*, 477 U.S. at 248.  The nonmovants' failure to produce proof as to any essential element of a claim renders all other facts immaterial.  *See TruGreen Landcare, LLC v. Scott*, 512 F. Supp. 2d 613, 623 (N.D. Tex. 2007).  Summary judgment is mandatory if the nonmovants fail to meet this burden.  *See Little*, 37 F.3d at 1076.

summary judgment." *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992). Parties should "identify specific evidence in the record, and . . . articulate the 'precise manner' in which that evidence support[s] their claim." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (citation omitted). Disposing of a case through summary judgment serves to reinforce the purpose of the Federal Rules of Civil Procedure, which is "to achieve the just, speedy, and inexpensive determination of actions, and, when appropriate, affords a merciful end to litigation that would otherwise be lengthy and expensive." *Fontenot*, 780 F.2d at 1197.

## C. Framework for Asylum Applications

Under the Immigration and Nationality Act ("INA"), "[a]ny alien who is physically present in the United States . . . irrespective of such alien's status, may apply for asylum." 8 U.S.C. § 1158(a)(1). The INA provides the Secretary of Homeland Security and the Attorney General with the power and discretion[6] to "grant asylum to an alien who has applied for asylum in accordance with the requirements and procedures established by the Secretary of Homeland Security or the Attorney General" if an applicant is determined to be a refugee within the meaning of 8 U.S.C. § 1101(a)(42)(A).[7] 8 U.S.C. §1158(b)(1)(A); *Obiabaka v. Jaddou*, No. 4:24-CV-3074, 2025 WL 492496, at *2 (S.D. Tex. Jan. 29, 2025). Additionally, the INA sets forth a timetable under which asylum applications are to be adjudicated. *See Kizilyildirim v. Daum*, No 4:23-cv-03287, 2024 WL 1722277, at *1 (S.D. Tex. Mar. 29, 2024). Generally, absent exceptional circumstances, an "initial interview or hearing on the asylum application shall commence not later than 45 days after

---

[6] The language of section 1158(b)(1)(A) of Title 8 explicitly denotes the discretion possessed by the Secretary of Homeland Security and the Attorney General when adjudicating asylum applications providing that either individual "***may***" grant asylum to an alien. *See* 8 U.S.C. § 1158(b)(1)(A) (emphasis added).

[7] "An asylum applicant must meet the definition of a 'refugee' by establishing that they experienced past persecution of have a well-founded fear of future persecution, on account of race, religion, nationality, membership in a particular social group, or political opinion." *Yildirim v. Mayorkas*, No. 4:23-CV-03983, 2025 WL 950086, at *2 (S.D. Tex. Mar. 28, 2025) (citing 8 U.S.C. §§ 1101(a)(42)(A), 1158(b)(1)(B)(i)).

the date an application is filed" and a "final administrative adjudication of the asylum application . . . shall be completed within 180 days after the date an application is filed."  8 U.S.C. § 1158(d)(5)(A)(ii)-(iii).  While the INA provides a timetable to adjudicate asylum applications, it does not provide for a private right of action to enforce its timing procedures.  *See Yildirim*, 2025 WL 950086, at *3 (noting that section 1158(7) "explicitly provides that [the] interview and adjudication timeframes are aspirational and do not create a private right of action enforceable against the federal government") (citing 8 U.S.C § 1158(d)(7)); 8 U.S.C. §1158(d)(7) (Section 1158(d) shall not "be construed to create any substantive or procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers or any other person").

    In adjudicating asylum applications, the USCIS utilizes the "last in, first out ("LIFO") rule," which "is a capacity-based scheduling system."  *Kizilyildirim*, 2024 WL 1722277, at *1. According to the LIFO rule, USCIS "prioritize[s] asylum applications in the following order: (1) applications where interviews need rescheduling; (2) applications pending 21 days or fewer; and (3) all others, starting with the new filings and working backwards."  *Topuz*, 2024 WL 4282091, at *1; *see also* Pl's Compl. at 6.  The rationale behind adjudicating the most recent asylum applications ahead of older ones is grounded in the belief that it serves to "disincentivize the filing of non-meritorious applications just to obtain the work authorization available to individuals whose applications were not resolved within a short period of time."  *Obiabaka*, 2025 WL 492496, at *2 (quoting *Kizilyildirim*, 2024 WL 1722277, at *1).

## III.   DISCUSSION

While the Court converted Defendants' 12(b)(1) and 12(b)(6) Motion to Dismiss into a Motion for Summary Judgment, because subject matter jurisdiction is a threshold issue, the Court begins by addressing Defendants' jurisdiction arguments.

### A.    Subject Matter Jurisdiction

Mahmoud alleges this Court has jurisdiction over his claims pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1361 (mandamus).  (Pl.'s Compl. at 3.)  Mahmoud seeks relief under the APA, 5 U.S.C. § 701 *et seq.*, and the Mandamus and Venue Act, 28 U.S.C. § 1361.  (*Id.*)  The Court addresses Defendants' arguments as to whether this Court has jurisdiction over Mahmoud's APA and Mandamus claims below.

### 1.    APA Claim

The APA provides individuals the opportunity to seek judicial remedies if they are adversely affected by "agency action."  *See* 5 U.S.C. § 702.  While the APA "does not provide an independent basis for jurisdiction[,] an action to compel a federal agency action presents a federal question." *Oniwon v. U.S. Citizenship & Immigr. Servs.*, No. H-19-3519, 2020 WL 1940879, at *2 (S.D. Tex. Apr. 6, 2020) (citation omitted), *report & recommendation adopted*, 2020 WL 1939686 (S.D. Tex. Apr. 22, 2020).  In turn, the APA confers jurisdiction on a reviewing court to "compel agency action unlawfully withheld or unreasonably delayed,"[8] and expressly excludes a reviewing court's jurisdiction "where the agency action is committed to agency discretion by law."[9]  In this context, such claims may "proceed only where the plaintiff shows that the agency failed to take a discrete action that it is required to take."  *Atay v. U.S. Citizenship & Immigr. Servs.*,

---

[8] *See* U.S.C. § 706(1).

[9] *See* U.S.C. § 701(a)(2)

No. H-24-3495, 2025 WL 1457083, at *4 (S.D. Tex. Apr. 25, 2025) (citations omitted), *report & recommendation adopted*, 2025 WL 1456795 (S.D. Tex. May 20, 2025); *see Ahmed v. Bitter*, 727 F. Supp. 3d 630, 635 (S.D. Tex. 2024) (noting "federal courts are only empowered 'to compel an agency to perform a ministerial or non-discretionary act'") (quoting *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004)).  Thus, for this Court to have jurisdiction over Mahmoud's APA claim, he must first sufficiently allege that Defendants "have failed to take a discrete agency action that it is required to take."  *Id.*

Defendants argue that this Court lacks jurisdiction over Mahmoud's APA claim "because the government has no duty to adjudicate an asylum application within a specific timeframe." (Defendants' Motion for Summary Judgment ("Defs.' Summ. J. Mot.") [doc. 12] at 6.) Specifically, Defendants allege that Mahmoud cites to 8 U.S.C. § 1158(d), which provides the process for adjudicating asylum applications and expressly disclaims any private right of action to enforce the timing provisions under the INA.  (Defs.' Summ. J. Mot. at 16.)  Thus, Defendants claim this Court lacks jurisdiction to enforce the timing guidelines laid out in 8 U.S.C. § 1158(d)(5)(A).

However, Defendants arguments are misplaced.  Mahmoud expressly states that he is not seeking to enforce the timing provisions of § 1158(d) but, rather, cites this statute to show how the delay beyond the timing guidelines is unreasonable.  (Pl.'s Compl. at 6 n.2; Pl.'s First Resp. at 15.) Mahmoud argues that this Court has jurisdiction under 5 U.S.C. § 706(1) to decide whether the unreasonable delay in scheduling his interview and adjudicating his asylum application violates the APA.  (Pl.'s Compl. at 22.)  Mahmoud also alleges this Court has jurisdiction over his claims pursuant to 5 U.S.C. § 555(b).  (Pl.'s Compl. at 3.)

Section 555(b), which mandates standards applicable to every federal agency, provides, "With regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b). Courts interpreting section 555(b) have found "that the Government has a non-discretionary duty to adjudicate applications within a reasonable time." *Ahmed*, 727 F. Supp. 3d at 636 (collecting cases). Thus, the Court agrees with Mahmoud that it has jurisdiction to hear his claim for unreasonable delay under this provision of the APA. *See Duran v. U.S. Citizenship & Immigr. Servs.*, No. H-23-4618, 2024 WL 3166942, at *3 (S.D. Tex. June 25, 2024).

However, to the extent that Mahmoud takes issue with Defendants' use of the LIFO, the Court does not have jurisdiction to review this claim. Under the APA, a court lacks the authority "to implement programmatic changes necessary to speed [up] the processing of asylum applications" and "[t]he APA does not give the courts the authority to compel the agency to change the method it uses to schedule and process asylum applications." *Ayana v. Jaddou*, No. H-23-2937, 2023 WL 8936700, at *3 (S.D. Tex. Dec. 27, 2023) (citing *Sierra Club v. Peterson*, 228 F.3d 559, 566-67 (5th Cir. 2000)); *Duran*, 2024 WL 3166942, at *3 ("The APA does not allow courts to compel the agency to change the method it uses to schedule and process asylum applications."); *see also Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990) ("[R]espondent cannot seek *wholesale* improvement of this program by court decree, rather than in the offices of the Department of the halls of Congress, where programmatic improvements are normally made.").

### 2. Mandamus Act Claim

Federal courts possess "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. However, "[t]he mandamus relief is 'a drastic one, to be

invoked only in extraordinary circumstances.'" *Topuz*, 2024 WL 4282091, at *3 (citing *Allied Chem. Corp. v. Daiflon, Inc.* 449 U.S. 33, 34 (1980)). To obtain mandamus relief, Mahmoud must show that (1) he has a clear right to relief, (2) Defendants' officials have a clear duty to act, and (3) no other adequate remedy exists. *See Derick v. Jaddou*, No. 1-23-CV-00857-DII, 2024 WL 3035626, at *4 (W.D. Tex. June 17, 2024) (citing *Mendoza-Tarango v. Flores*, 982 F.3d 395, 400 (5th Cir. 2020)), *report & recommendation adopted*, 2024 WL 3282486 (W.D. Tex. July 4, 2024). Mahmoud's "claim must be 'clear and certain[, ] the duty of the officer ministerial[,] and so plainly prescribed as to be free from doubt.'" *Salar v. U.S. Citizenship & Immigr. Servs.*, No. 23-1997, 2023 WL 8716579, at *3 (E.D. La. Dec. 18, 2023) (quoting *Giddings v. Chandler*, 979 F.2d 1104, 1108 (5th Cir. 1992)). Additionally, even if Mahmoud can meet the requirements for mandamus relief, the decision of whether to grant such relief is committed to the sound discretion of this Court. *See Derick*, 2024 WL 3035626, at *4 (quoting *Mendoza-Tarango*, 982 F.3d at 400) ("Even if all three elements [for mandamus relief] are satisfied, 'the decision to grant or deny the writ remains within the court's discretion because of the extraordinary nature of the mandamus remedy.'")

In determining jurisdiction, while courts in the Fifth Circuit have considered whether 8 U.S.C. § 1158(d)(7) of the INA deprives a court of subject matter jurisdiction to consider mandamus relief, a lack of uniformity exists. *See, e.g., Atay*, 2025 WL 1457083, at *3 (finding jurisdiction exists over Plaintiff's mandamus claim but refraining from exercising it); *Ahmed*, 727 F. Supp. 3d at 636 (finding the court has, but declines to exercise, jurisdiction over Plaintiff's mandamus claim); *Kayihura v. Garland*, No. 3:24-CV-0367-D, 2024 WL 2868995, at *3 (N.D. Tex. June 6, 2024) (finding jurisdiction); *Duran*, 2024 WL 3166942, at *3 (holding the court has no jurisdiction over mandamus claim because "timely action is not an agency duty enforceable by

an impatient applicant"); *Topuz*, 2024 WL 4282091, at *3-4 (holding no jurisdiction over Plaintiff's mandamus claim because the statute expressly disclaims a private right of action); *Yildirim*, 2025 WL 950086, *3-4 (finding no jurisdiction); *Ayana*, 2023 WL 8936700, at *3 (finding no jurisdiction). Here, because Mahmoud's action seeks to compel Defendants to perform an allegedly nondiscretionary duty—adjudicating his asylum application within a reasonable-time period—mandamus jurisdiction exists. However, for the reasons stated below, the Court declines to exercise jurisdiction over Mahmoud's mandamus claim.

### B. Summary Judgment

Before this Court addresses the merits of Mahmoud's APA and mandamus claims, it will address Mahmoud's arguments in opposition of this Court's conversion of Defendants' motion into a motion for summary judgment.

### 1. Mahmoud's Opposition to the Court's Conversion of Defendants' Motion

Mahmoud alleges, *inter alia*, that this Court's conversion of Defendants' motion "without first affording Plaintiff any opportunity for discovery, was procedurally improper and severely prejudicial." (Pl.'s Second Resp. at 15.) He argues that discovery in this case is essential to uncover facts supporting Mahmoud's claims and to oppose Defendants' Motion for Summary Judgment. (*Id.*) Mahmoud alleges that discovery into the following topics is essential for his claims:

- Internal USCIS policies, procedures, memoranda, and decision-making records concerning the adoption, implementation, and ongoing rationale for the LIFO processing policy versus FIFO, including any analyses of its impact on backlog reduction and fairness to applicants . . . .

- Statistical data, studies, or analyses, if any exist, that Defendants rely upon to support their claim that LIFO deters frivolous asylum applications or is more efficient than FIFO in managing the asylum caseload . . . .

- Internal data and records detailing the *actual percentage* of asylum applications deemed by USCIS adjudicators over relevant periods, as distinct from raw numbers of application filings . . . .

- Documents concerning resource allocation, staffing levels, budget priorities, and workload management strategies within USCIS specifically pertaining to affirmative asylum adjudications, including any impact assessments of the recent workforce reductions . . . .

- Internal communications, meeting minutes, and reports related to the management of the asylum backlog, the operational realities of the "backlog blackhole" described by Mr. Edlow[], and the basis for his public statements regarding the agency's lack of knowledge about the backlog's composition . . . .

- Detailed operational procedures for "Track 1" and "Track 2" asylum processing, including criteria for case selection, the impact of "random" scheduling factors, and how cases like Mr. Mahmoud's are managed (or not managed) within this hybrid system.

(*Id.* at 16-17 (emphasis in original).)

In response, Defendants claim, *inter alia*, that summary judgment is appropriate, and that Mahmoud's discovery requests amount to a fishing expedition where Mahmoud hopes to find evidence to support his claims. (Defs.' Second Reply at 2.) In support of Defendants' argument, they allege that in APA cases discovery is generally limited to the record compiled by the agency absent a showing of bad faith or other unusual circumstances. (*Id.* at 3.) They further argue that Mahmoud has failed to allege bad faith and, as for unusual circumstances, Defendants have already provided Mahmoud the information he seeks. (*Id.*) In sum, Defendants argue that discovery into the topics Mahmoud seek is not necessary because his "claims are limited to USCIS's adjudication of his individual asylum application" and, beyond this, "expansive requests for discovery about the decision-making behind USCIS's adjudication policy" is more appropriate for a different kind of suit, not applicable here. (*Id.* at 3-4.)

Where, as here, "a party presents matters outside the pleadings with a Rule 12(b)(6) motion to dismiss, a court has **complete** discretion to either accept or exclude the evidence for purposes of the motion to dismiss." *Kayihura*, 2024 WL 2868995, at *4 (internal quotation marks and citation omitted) (emphasis added). However, if a court takes these matters into consideration or fails to exclude them then "'the motion must be treated as one for summary judgment under Rule 56,' and '[a]ll parties must be given a reasonable opportunity to present all material that is pertinent to the motion.'" *Id.* (quoting Fed. R. Civ. P. 12(d)). In the context of immigration, other courts in the Fifth Circuit have applied a summary judgment standard in evaluating a plaintiff's claims before discovery has occurred. *See Kizilyildirim*, 2024 WL 1722277, at *3; *Ayana*, 2023 WL 8936700, at *3; *Ahmed*, 727 F. Supp. 3d at 636; *Duran*, 2024 WL 3166942, at *3; *Diagana*, 2024 WL 1743139, at *3; *see also Goldschmidt v. U.S. Atty. Gen.*, No. 3:07-CV-670-AH, 2007 WL 3033502, at *2 n.2 (N.D. Tex. Oct. 18, 2007) ("That which constitutes an unreasonable delay is fact intensive and must be determined on a case-by-case basis which **may** be addressed in a motion for summary judgment . . . .") (emphasis added). Because the Court, in exercising its discretion, is not excluding the matters outside the pleadings that Defendants present in their motion, the Court would have been required to apply the summary judgment standard regardless of whether the Court had *sua sponte* converted this motion. Therefore, the use of the summary judgment standard is appropriate in evaluating Mahmoud's claims.

While Mahmoud claims that he should have been entitled to discovery prior to the Court's resolution of this motion, the Court disagrees.[10] "Rule 56 does not require that any discovery take

---

[10] While not binding, the Court notes that courts in the Ninth Circuit decide immigration actions on summary judgment without permitted discovery. *See Kulakov v. U.S. Citizenship & Immigr. Servs.*, No. 2:24-cv-01337-DJC-AC, 2024 WL 4804098, at *3 (E.D. Cal. Nov. 15, 2024) (collecting cases); *see Ali v. Ordeman*, No. 2:23-cv-02822 CKD, 2024 WL 2274912, at *5 (E.D. Cal. May 17, 2024) ("District courts in this circuit routinely decide immigration actions on summary judgment without discovery.").

place before summary judgment can be granted; if a party cannot adequately defend such a motion, Rule 56(f) is his remedy." *See Washington v. Allstate Ins. Co*, 901 F.2d 1281, 1285 (5th Cir. 1990) (collecting cases); *see Brown v. Livingston*, 524 F. App'x 111, 115 (5th Cir. 2013) (per curiam). The Fifth Circuit has held that "a plaintiff's entitlement to discovery prior to ruling on a motion for summary judgment is not unlimited and may be cut off when the record shows that the requested discovery is not likely to produce the facts needed by the plaintiff to withstand a motion for summary judgment." *Washington*, 901 F.2d at 1285 (collecting cases). Thus, "[t]o justify relief, the party opposing summary judgment must show (1) why he or she needs additional discovery, and (2) how the additional discovery will likely create a genuine issue of material fact." *Nastasi v. Ilawan*, No. 14-218, 2014 WL 2581206, at *4 (E.D. La. May 13, 2014) (citing *Chenevert v. Springer*, 431 F. App'x 284, 287 (5th Cir. 2011)).

Here, Mahmoud's broad discovery requests seek various documents related to USCIS's use of LIFO, including data, internal communications, meeting minutes, decision-making records, and policy justifications. These requests do not focus on Mahmoud's individual claims for unreasonable delay. Permitting Mahmoud to conduct this discovery would likely amount to a fishing expedition of which no material facts are likely to be garnered. As identified by Defendants, judicial review of Mahmoud's claims for unreasonable delay are generally limited to the administrative record. *See Kotha v. Renaud*, No. 3:21-CV-641-N, 2021 WL 4027697, at *2 (N.D. Tex. May 12, 2021). To go beyond the administrative record "[i]n order to obtain even 'limited discovery,' a party must make 'a significant showing . . . that it will find material in the agency's possession indicative of bad faith or an incomplete record." *Id.* (quoting *Chang v. U.S. Citizenship & Immigr. Servs.*, 254 F. Supp. 3d 160, 161 (D.D.C. 2017)); *see Agarwal v. Renaud*, No. 3:21-CV-649-N, 2021 WL 3639805, at *1 (N.D. Tex. May 12, 2021) ("There must be a strong

showing of bad faith or improper behavior before inquiry into the mental processes of agency decision-makers may be made.") (internal quotation marks and citations omitted). Mahmoud fails to set forth any allegations as to why the general presumption that discovery is limited to the administrative record should be overcome. As such, the discovery Mahmoud seeks would be unlikely to create a genuine dispute as to a material fact and, thus, discovery is not warranted for the Court to rule on Defendants' motion.

### 2. APA Claim

Mahmoud alleges that Defendants' failure to schedule his asylum interview and adjudicate his asylum application in two years constitutes unreasonable delay. (Pl.'s Compl. at 22; Pl.'s Second Resp. at 21.) Defendants argue that Mahmoud has failed to show unreasonable delay by Defendants of his asylum application. (Defs.' Summ. J. Mot. at 26; Defs.' Second Reply at 5.)

As stated above, the APA allows courts to compel agency action when the action has been "unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1); *see also* 5 U.S.C. § 555(b) (the APA mandates that an "agency shall proceed to conclude a matter presented to it" "within a reasonable time"). However, "'a claim under § 706(1) can proceed only where a plaintiff asserts that an agency [1] failed to take a *discrete* agency action that [2] it is *required to take*.'" *Li v. Jaddou*, No. 22-50756, 2023 WL 3431237, at *1 (5th Cir. Mar. 12, 2023) (per curiam) (unpublished) (quoting *Norton*, 542 U.S. at 64) (numbering in original). "Federal courts have concluded that [Defendants have] a nondiscretionary duty to adjudicate applications within a reasonable time." *Kayihura*, 2024 WL 2868995, at *4.

"What constitutes an unreasonable delay in the context of immigration applications depends to a great extent on the facts of the particular case." *Kolluri v. U.S. Citizenship & Immigr. Servs.*, No. 3:20-CV-02897-N, 2021 WL 183316, at *4 (N.D. Tex. Jan. 17, 2021) (quoting *Ahmadi*

*v. Chertoff*, 522 F. Supp. 2d 816, 822 (N.D. Tex. 2007)). Nonetheless, in evaluating claims for unreasonable delay, courts often apply the factors set forth in *Telecommunications Resch. and Action Ctr. v. F.C.C.* ("*TRAC*"), 750 F.2d 70, 80 (D.C. Cir. 1984).[11] Utilizing the TRAC factors, a court asks the following:

(1) Whether the agency's timing is governed by a "rule of reason;"

(2) Whether Congress has provided a timetable;

(3) Whether the consequence of delay is economic, in which case delay is more tolerable than "when human health and welfare are at stake;"

(4) Whether expediting delayed action will affect other agency priorities;

(5) What interests will be prejudiced by delay; and

(6) Whether impropriety is behind the delay (though impropriety isn't required to find unreasonable delay).

*See Ahmed*, 727 F. Supp. 3d at 637-38 (quoting *TRAC*, 750 F.2d at 79-80). Although the Fifth Circuit has not adopted these factors,[12] courts in this Circuit "have found the structure helpful to address unreasonable delay claims under APA § 706(1)." *Kizilyildirim*, 2024 WL 1722277, at *6 (citation omitted); *see Zheng*, 2023 WL 4112938, at *5-6.

    a.   First *TRAC* Factor

Under the first *TRAC* factor, a court asks "[w]hether the agency's timing is governed by a 'rule of reason.'" *Ahmed* 727 F. Supp. 3d at 637 (quoting *TRAC*, 750 F.2d at 80). The first TRAC

---

[11] Mahmoud argues that use of the *TRAC* factors is inappropriate at this stage of the case. (Pl.'s First Resp. at 19.) In support of his argument, Mahmoud cites *Kang*, which is a case out of California. *See Kang v. Jaddou*, No. 2:21-cv-09488-RGK-E, 2022 WL 2189634, at *3 (C.D. Cal. Apr. 25, 2025). However, while the Court acknowledges Mahmoud's argument, this Court joins other courts within this Circuit who have found the *TRAC* factors to be instructive in this context and applies them here. *See Zheng v. Mayorkas*, No. 1:22-CV-95-SA-RP, 2023 WL 4112938, at *5-8 (N.D. Miss. June 21, 2023) (applying *TRAC* factors to Plaintiff's unreasonable delay claim); *see Kizilyildirim*, 2024 WL 1722277, at *6-7 (same); *Ahmed*, 727 F. Supp. 3d at 637-40 (applying *TRAC* factors to Plaintiff's APA claim in deciding Defendants' motion for summary judgment).

[12] The Fifth Circuit "has never adopted [the TRAC] multi-factor test." *Li*, 2023 WL 3431237, at *1 n.2.

factor has been considered to be the most important. *See Zheng*, 2023 WL 4112938, at *6 (citing *Ensco Offshore Co. v. Salazar*, 781 F. Supp. 2d 332, 337 (E.D. La. Feb. 17, 2011)). This factor looks at "whether there is any rhyme or reason for the Government's delay—in other words, whether the agency's response time is governed by an identifiable rationale." *Cheng v. Garland*, No. 1:24-cv-03465 (JLR), 2024 WL 5009146, at *3 (S.D.N.Y. Dec. 6, 2024). For this factor, a brief history of LIFO is appropriate.

LIFO was originally enacted with the goal of identifying frivolous or fraudulent asylum applications filed by individuals wishing to obtain employment authorization documents. (Defs.' Summ. J. Mot. at 12 n.4; Pl.'s Compl. at 8 ("USCIS has claimed LIFO is used because it is an effective means for reducing the number of frivolous affirmative asylum applications filed.").) To do reach this goal, under LIFO Defendants prioritize the adjudication of the most recently filed asylum applications. (Pl.'s Compl. at 6; Defs.' Summ. J. Mot. at 10.) Asylum interviews are, thus, scheduled based on the following priority: (1) applications that were scheduled for an interview, but the interview had to be rescheduled either at the applicant's request or the needs of Defendants; (2) applications that have been pending twenty-one days or less; and (3) all other affirmative applications would be scheduled for interviews starting with the newer filings and working back towards the older filings. (Pl.'s Compl. at 6.)

In 2014, Defendants switched its method of processing asylum applications from LIFO to "First In, First Out" ("FIFO"). (Pl.'s Compl. at 7.) Under FIFO, asylum applications are processed in the order in which they are filed. (*Id.*) Subsequently, in 2018, Defendants, facing a "crisis-level backlog of [ ] asylum applications," switched its method of processing applications back to LIFO as a means of stemming growth of the backlog and to identify non-meritorious claims sooner. (Defs.' Summ. J. Mot. at 10.) Currently, and at the time Mahmoud's application was filed,

Defendants utilize two tracks for scheduling affirmative asylum interviews (the second step to getting an application adjudicated). (Defs.' Summ. J. Mot. at 12.) Under the first track, the priorities set forth under the LIFO are followed and under the second track, Defendants appoint asylum officers to tackle the backlog by permitting some of the oldest pending cases to be completed in chronological order. (Defs.' Summ. J. Mot. at 13.)

Defendants, while acknowledging there has been a delay in adjudicating asylum applications due to the dramatic, increased volume of applications,[13] argue that LIFO constitutes a rule of reason. (Defs.' Summ. J. Mot. at 19.) In response, Mahmoud alleges, *inter alia*, that "Defendants motion is the only place in the record where [the] alleged facts exist . . . that would support the notion that LIFO is based on a 'rule of reason.'" (Pl.'s First Resp. at 21.) However, as Defendants have identified, many courts, within and outside this Circuit, have found LIFO to be a rule of reason. *See, e.g., Kizilyildirim*, 2024 WL 1722277, at *6 (finding "the LIFO rule 'constitutes a rule of reason that satisfies the first *TRAC* factor'") (quoting *Xu v. Cissna*, 434 F. Supp. 3d 43, 53 (S.D.N.Y. 2020) (LIFO is "a reasoned response to a systematic crisis")); *Ataman v. Daum*, No. 4:23-cv-2637, 2024 WL 4265825, at *5 (S.D. Tex. Sept. 23, 2024) (agreeing with other courts that LIFO is a rule of reason) (collecting cases); *Topuz*, 2024 WL 4282091, at *5 (same); *Doe v. Dept. of Homeland Security*, No. 23-CV-2, 2024 WL 1603567, at *3-4 (E.D. La. Apr. 12, 2024) (same); *Zheng*, 2023 WL 4112938, at *6 (same); *Yueliang Zhang v. Wolf*, No. 19-cv-5370 (DLI), 2020 WL 5878255, at *4-5 (E.D.N.Y. Sept. 30, 2020) (same); *Belay v. Donis*, No. 1:24-cv-2117 (RDA/IDD), 2025 WL 2107703, at *8 (E.D. Va. July 28, 2025) (same). Having reviewed these authorities and considered the record in this case, including the fact that Mahmoud

---

[13] Mahmoud does not dispute that there has been an increase in the number of affirmative asylum applications filed. (*See* Pl.'s Compl. at 21 ("the 239,121 affirmative asylum applications filed in [Fiscal Year] 2022 represented a 302% increase from the previous year's total of 59,416").)

has provided no authority to the contrary, the Court agrees with these other courts and finds that LIFO is a rule of reason.  Thus, the first *TRAC* factor weighs in favor of Defendants.

        b.    <u>Second *TRAC* Factor</u>

The second *TRAC* factor looks at whether Congress has provided a timeline for adjudicating asylum applications.  *TRAC*, 750 F.2d at 80.  As relevant here, 8 U.S.C. § 1158 provides a timeline for adjudicating asylum applications.  *See* 8 U.S.C. § 1158(d).  Section 1158(d) provides that "in the absence of exceptional circumstances, the initial interview or hearing on the asylum application shall commence not later than 45 days after the date an application is filed" and "in the absence of exceptional circumstances, administrative adjudication of the asylum application, not including administrative appeal, shall be completed within 180 days after the date an application is filed."  *See* 8 U.S.C. § 1158(d)(ii)-(iii).  However, as acknowledged by Mahmoud, these deadlines are aspirational and not mandatory.  *See Kayihura*, 2024 WL 2868995, at *2 (noting that "[t]he immigration statutes and regulations do not prescribe an enforceable deadline by which USCIS is required to adjudicate asylum applications"); *see also Ayvali v. United States*, No. 1:23-CV-896-RP, 2024 WL 1319751, at *4 (W.D. Tex. Mar. 27, 2024) (the aspirational timeframe set forth in section 1158 "is not a clear mandate that would indicate USCIS was *required* to act within that timeframe") (internal quotation marks and citation omitted) (emphasis in original).  Furthermore, the language "in the absence of exceptional circumstances" indicates that Congress foresaw there may be circumstances that would delay the adjudication of asylum applications.

Here, Defendant argues that several exceptional circumstances have caused the delay, including, but not limited to, the following: (1) the significant increase in affirmative asylum applications; (2) the lack of additional funding for asylum process or to deal with backlogs; (3) an influx in lawsuits; and (4) the need to divert asylum officers away from adjudicating applications

to Defendants' other programs.[14]  (Defs.' Summ. J. Mot. at 9-13.)  In response, as stated above, Mahmoud acknowledges that the timeline for adjudicating applications in section 1158(d) is aspirational but, nonetheless, argues[15] that the two-year delay is unreasonable.  (Pl.'s First Resp. at 22.)  Furthermore, Mahmoud alleges, *inter alia*, that because of this unreasonable delay, he has no reason to believe his application will ever be adjudicated.[16]  (*Id.*)  However, in the context of immigration applications, courts have recognized that it "'takes time—and often a lot of it' . . . [and that] delays of 'years—or even decades' [is] an unfortunate, but lawful, reality of the immigrant visa process."  *Ahmed*, 727 F. Supp. 3d at 638 (quoting *Scialabba v. Cuellar de Osorio*, 573 U.S. 41, 45-50 (2014)).  Many courts have held that delays spanning several years are not unreasonable.  *See, e.g., Ahmed*, 727 F. Supp. 3d at 638 (less than three-year delay not unreasonable); *Kizilyildirim*, 2024 WL 1722277, at *7 (more than three-year delay not unreasonable); *Ataman*, 2024 WL 4265825, at *5-7 (finding four-year delay not unreasonable);

---

[14] As set forth in Defendants evidence and acknowledged by Mahmoud, in fiscal year 2022 Defendants saw an increase in more than 300% of asylum applications.  (Pl.'s Compl. at 21; Defendants' Appendix in Support of Defendants' Motion ("Defs.' App.") [doc. 18] at 6-7.)  There has also been a substantial influx in litigation related to asylum applications, like Mahmoud's action here, which diverts resources away from adjudicating applications.  (Defs.' App. at 1939-43; Pl.'s Second Resp., Exhibit ("Ex.") 1 at 13-14.)  The evidence Mahmoud attaches in his second response notes that Defendants struggle to meet deadlines due to a lack of funding, which has resulted in a shortage of staff to address the backlog issue.  (Pl.'s Second Resp., Ex. 1 at 3, 11.)

[15] Mahmoud raises various arguments in his pleadings that take issue with the use of LIFO as a whole.  However, as stated above, the Court does not have the authority to compel an agency to change or speed up their processes.  *See Ayana*, 2023 WL 8936700, at *3.  Thus, the Court will not address these arguments.

[16] Mahmoud raises the argument that there is no actual line under which an applicant's application, like his, will be adjudicated.  (Pl.'s Compl. at 12-13; Pl.'s Second Resp. at 7, 9 ("There is no chance of his application ever being adjudicated under the current process.").)  These allegations however are conclusory and speculative at best.  Mahmoud fails to cite to any authority or evidence showing that there are, in fact, applications which have never been adjudicated under Defendants' use of LIFO.  Additionally, Mahmoud's first argument fails to consider the fact that under LIFO there are two tracks or two separate lines under which his application may be adjudicated.  As his application falls outside the statutory, aspirational timeline, his application is in line to be adjudicated under "Track 2," which is done chronologically with the oldest applications being put first.  Therefore, Mahmoud's conclusory allegations are insufficient to create a genuine issue of material fact.  *See Jaraba*, 568 F. Supp. 3d at 738-39 (finding that while "Plaintiffs' frustration that they do not know where they stand in line is understandable," their allegation that, because Defendant has never communicated where they are in line nor provided evidence to show the line even exists, the line doesn't exist "is insufficient to support their conclusion that the line is a fiction").

*Topuz*, 2024 WL 4282091, at \*5-8 (same); *Dashtestani v. U.S. Dep't of State*, No. 2:24-CV-00032, 2024 WL 3843781, at \*8 (S.D. Tex. July 15, 2024) (noting that "many courts in this circuit and elsewhere have found that a delay of two, three, or even four years falls short of what courts generally consider 'unreasonable' under applicable case law") (citation omitted), *report & recommendation denied as moot*, 2024 WL 4048760 (S.D. Tex. July 16, 2024); *Marmol v. McHenry*, No. 25-cv-20499-BLOOM/Elfenbein, 2025 WL 1865120, at \*4 (S.D. Fla. July 7, 2025) (delay of seven years not unreasonable). Consequently, the Court finds that the second *TRAC* factor weighs in favor of Defendants.

### c.    Third and Fifth *TRAC* Factors

Courts often address the third and fifth *TRAC* together. *See Zheng* 2023 WL 4112938, at \*7; *Jaraba v. Blinken*, 568 F. Supp. 3d 720, 238 (W.D. Tex. 2021) (together "[t]he third and fifth factors consider the costs of delay on the plaintiffs"). The third *TRAC* factor looks at whether the consequence of delay is economic as opposed to human health and welfare, and the fifth *TRAC* factor looks at the nature and extent an applicant's interests are prejudiced by delay. *See TRAC*, 750 F.2d at 80.

As to these factors, Mahmoud alleges he is "in a state of emotional distress over the possibility of having to return to ARE where he almost certain to face persecution on account of his relief" and feels he has been left "in a seemingly never-ending state of limbo." (Pl.'s Compl. at 22-23.) He further claims that he is living in fear, which "has left him in a state of emotional turmoil and limbo." (Pl.'s First Resp. at 22-23.) Additionally, Mahmoud alleges that Defendants' unreasonable delay is "preventing him from bringing his family over and being able to start the process of becoming a resident and a citizen." (*Id.*; Pl.'s Compl. at 20.) Defendants argue that, while acknowledging the difficulty of Mahmoud's situation, these challenges are inherent in the

asylum application process and that Mahmoud fails to show how his circumstances are different from other similarly situated applicants.  (Defs.' Summ. J. Mot. at 23; Defendants' Reply in Support of Defendants' Motion to Dismiss ("Defs.' First Reply") [doc. 16] at 6.)  Furthermore, Defendants allege that, because Mahmoud is permitted to stay in the United States and work pending resolution of his application, the third and fifth factors favor Defendants.  (Defs.' First Reply at 7.)

While this Court is sympathetic to Mahmoud's challenges, it appears that some of the hardships complained of are those that, as recognized by Defendants, are inherent in the asylum application process.  *See Wara v. U.S. Citizenship & Immigr. Servs.*, No. 24-CV-03535 (OEM), 2025 WL 2208255, at *6 (E.D.N.Y. Aug. 4, 2025) (noting that "the alleged uncertainty as to the outcome of Plaintiff's application and the related financial and emotional harms are largely 'inherent in the asylum application process'") (quoting *Xu*, 434 F. Supp. 3d at 54) (collecting cases); *Hamdan v. Oudkirk,* No. 24-1001 (BAH), 2024 WL 4553983, at *9-10 (D.D.C. Oct. 23, 2024) (noting that three-year separation from wife not sufficient to tip third or fifth TRAC factor in Plaintiff's favor); *see also Ataman*, 2024 WL 4265825, at *6; *Kizilyildirim*, 2024 WL 1722277, at *7.  Mahmoud also fails to make a specific showing that his circumstances are different from those faced by similarly situated applicants.  *See Ahmed*, 727 F. Supp. 3d at 639 (finding that Plaintiff and his wife failed to make a showing "of anything particular to their unique situation, or that any hardships they face due to delay are different from those similarly situated applicants") (collecting cases); *see Ataman*, 2024 WL 4265825, at *7 (noting that "Plaintiff never clarifies why he, before the 20,000 applicants before him suffering the same prejudice, should be allowed to cut the line"); *see also Doe*, 2024 WL 1603567, at *4.  Even in the absence of evidence which differentiates Mahmoud from other similarly situated applicants, the third *TRAC* factor requires

courts to look at the impact on those similarly situated applicants from granting a plaintiff's requested relief. *See Hamdan*, 2024 WL 4553983, at *9 (citing *Mohammad v. Blinken*, 548 F. Supp. 3d 159-168-69 (D.D.C. 2021)). While Mahmoud may be prejudiced by the delay, pushing his application to the front of the line certainly prejudices the interests of those who have been waiting as long, if not longer.

Furthermore, as recognized by Defendants, Mahmoud need not, at this moment, worry about being returned to ARE as he is permitted to stay in the United States pending resolution of his application. *See Marmol*, 2025 WL 1865120, at *4 (finding Plaintiff's fear of persecution if returned to Venezuela has no bearing on the *TRAC* factor analysis where he is able to remain in the United States during the pendency of his application); *see also Zhu v. Noem*, No. EDCV 25-141-KK-SHKx, 2025 WL 1723157, at *4 (C.D. Cal. May 9, 2025) (finding that "Plaintiff's health and welfare are arguably more at stake upon prompt resolution as, at best, Plaintiff will be granted asylum and, at worst, his application is denied, and Plaintiff will be required to return [to his country] and risk the same persecution that led him to seek asylum in the first place"); *Ataman*, 2024 WL 4265825, at *7 (same). While the Court recognizes the difficulty in waiting for his asylum application to be processed, Mahmoud's allegations demonstrate minimal risk to human health or welfare, and any prejudice Mahmoud faces from delay is likely experienced by other similarly situated applicants. Therefore, the Court finds that the third and fifth *TRAC* factors weigh in favor of Defendants.

d.    Fourth *TRAC* Factor

Under the fourth *TRAC* factor, the Court considers the effect of expediting delayed action on agency activities of higher or competing priority. *See TRAC*, 750 F.2d at 80. Defendants advance the following reasons for why this factor weighs "heavily" in their favor: (1) "[e]xpediting

review of [Mahmoud]'s application over others would direct resources away from the adjudications that USCIS has identified as more urgent, requiring this Court to overrule the agency's prioritization decisions;" (2) permitting Mahmoud to jump the line ahead of others impacts other applicants; and (3) an order compelling prioritization of Mahmoud's application would result in additional similar lawsuits, producing no net gain in the administrative system and an increased burden on the judicial system. (Defs.' Summ. J. Mot. at 24-25.) Mahmoud, in response, does not address the impact of expediting the adjudication of his application. Rather, Mahmoud alleges that, as to the fourth *TRAC* factor, that adjudicating Mahmoud's application "can be done in a matter of hours and is the only way to place his application into a line." (Pl.'s First Resp. at 23.)

As several other courts have recognized, compulsion of the adjudication of Mahmoud's application results in no net gain to the administrative system and, ultimately, causes delays for other similarly situated applicants. *See Ahmed*, 727 F. Supp. 3d at 639 (noting that "'immigrant visa processing is a zero-sum game with [the agency's] limited resources. Processing one category of immigrant visas necessarily results in diminished resources for processing another category of visas'") (quoting *Gjoci v. Dep't of State*, No. 1:21-cv-00294-RCL, 2021 WL 3912143, at *13 (D.D.C. Sept. 1, 2021)); *see Kolluri*, 2021 WL 183316, at *6 (finding "[b]ecause granting Plaintiffs relief only harms other applicants, the Court determines that the fourth *TRAC* factor weighs in USCIS's favor"); *see also Alexeenko v. U.S. Citizenship & Immigr. Servs.*, No. 24-cv-1266-BJC-BLM, 2025 WL 1366865, at *5 (S.D. Cal. Apr. 18, 2025) (highlighting that "even where all other *TRAC* factors favor granting relief courts have refused to grant relief where a judicial order putting an applicant at the head of the queue would simply move all others back one space and produce

no net gain") (internal quotation marks and citations omitted).  Thus, the Court finds that the fourth *TRAC* factor weighs in favor of Defendants.

                  e.    Sixth *TRAC* Factor

Finally, under the sixth *TRAC* factor, the Court looks at whether there is any impropriety or "bad faith" behind the delay, but "the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed." *TRAC*, 750 F.2d at 80 (internal quotation marks and citation omitted); *see Kolluri*, 2021 WL 183316, at *6 ("factor six assesses the 'bad faith' of the agency's decisions").  As to this factor, Mahmoud alleges in his First Response that, *inter alia*, "there certainly appear to be more than a few possible improprieties involved in the extensive delay that occurred before this cause of action was even filed" and that more impropriety could be found.  (Pl.'s First Resp. at 23.)  Defendants argue that "[a]ny delay is not the result of agency impropriety" and that Mahmoud "has not alleged any facts to permit the Court to find the sixth *TRAC* factor weighs in his favor."  (Defs.' Summ. J. Mot. at 26.)  In support, Defendants allege that "USCIS has created a second track for scheduling asylum interviews and taken other measures to ameliorate the backlog."  (*Id.*)  Generally, "[t]o find that an agency acted in bad faith, . . . a party must present evidence of bad faith or impropriety driving the delay in adjudication of the relevant applications."  *See Parcharne v. Dep't of Homeland Sec.*, 565 F. Supp. 3d 785, 799 (N.D. Miss. 2021) (internal quotation marks and citation omitted).  Mahmoud fails to provide any evidence of bad faith or impropriety here and, while he alleges impropriety may be found, mere conclusory allegations of any potential, discoverable impropriety are not sufficient to tip this factor in his favor.  Thus, the Court finds that the sixth *TRAC* factor weighs in favor of Defendants.

As discussed above, all the *TRAC* factors weigh in favor of Defendants. Even looking at the evidence in the light most favorable to Mahmoud, he has failed to show that the delay in adjudicating his application is unreasonable and, thus, has failed to raise a genuine issue of material fact to support his APA claim. Therefore, the Court finds that Mahmoud's unreasonable delay claim under the APA should be **DENIED**.

### 3.    Mandamus Claim

As stated above, mandamus relief is an extraordinary remedy and the decision to grant mandamus relief is in the court's discretion. *See Derick*, 2024 WL 3035626, at *4 (citing *Mendoza-Tarango*, 982 F.3d at 400). To obtain mandamus relief, Mahmoud must show that (1) he has a clear right to relief, (2) Defendants' officials have a clear duty to act, and (3) no other adequate remedy exists. *See id.* Mahmoud has not shown that he has a clear right to relief, evidence shows that Defendants have no duty to act on a particular timeline, and, while Mahmoud does not currently have a claim for unreasonable delay, the APA would be an adequate remedy for such a claim. *See Atay*, 2025 WL 1457083, at *4 (citing *Jaraba*, 568 F. Supp. 3d at 731 (concluding under similar circumstances that relief under the Mandamus Act would be duplicative of the cause of action under the APA, thus barring mandamus relief)); *see also Sawan v. Chertoff*, 589 F. Supp. 2d 817, 826 (S.D. Tex. 2008) ("The APA provides a remedy for unlawfully delayed agency action; mandamus is not necessary for relief."). Therefore, while this Court has jurisdiction to consider Mahmoud's mandamus claim, the court should decline to exercise that jurisdiction. *See Atay*, 2025 WL 1457083, at *4 (declining to exercise jurisdiction over Plaintiff's mandamus claim); *see also Ahmed*, 727 F. Supp. 3d at 637 (declining to exercise jurisdiction over Plaintiff's mandamus claim).

## IV.   CONCLUSION

Based on the foregoing, the Court **RECOMMENDS** that Defendants' Motion for Summary Judgment [doc. 12] be **GRANTED**.

### NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document.  The United States District Judge need only make a de novo determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendations to which specific objection is timely made.  *See* 28 U.S.C. § 636(b)(1).  Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge.  *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), modified by statute on other grounds, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).

### ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **September 5**, **2025** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation.  It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED August 22, 2025.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE