UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**ATEF MAHMOUD,**

   Plaintiff,

v.                         No. 4:24-cv-00589-P

**ALEJANDRO MAYORKAS, ET AL.,**

   Defendants.

## ORDER ACCEPTING FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

On August 22, 2025, the United States Magistrate Judge issued Findings, Conclusions, and a Recommendation ("FCR") in this case, recommending that Defendants' Motion for Summary Judgment (ECF No. 12) be granted. ECF No. 23. Plaintiff filed an Objection to the FCR on September 8, 2025. ECF No. 26. The Court accordingly conducted a *de novo* review of the FCR. As detailed below, the Court will **ADOPT** the reasoning in the Magistrate Judge's FCR and **OVERRULE** Plaintiff's Objection.

### BACKGROUND

Plaintiff Atef Mahmoud, a native and citizen of the Arab Republic of Egypt ("ARE"), was admitted into the United States as a B-2 tourist visa holder in April 2022. ECF No. 1 at 1. In March 2023, Mahmoud sought asylum in the United States by filing a Form I-589 Application for Asylum and for Withholding Removal ("Form I-589") with Defendants. *Id.* at 4. Mahmoud's asylum application has been pending for approximately two years. *See id.*

Mahmoud filed his original complaint against the United States Department of Homeland Security ("DHS"), the United States Citizen and Immigration Services ("USCIS"), and their respective directors in June 2024. ECF No. 1. In Mahmoud's complaint, he alleges the following

causes of action: (1) violations of the Mandamus Act, 28 U.S.C. § 1361; and (2) violations of the Administrative Procedures Act ("APA"), 5 U.S.C. § 706(1). *Id.* at 21–23. Mahmoud's claims seek to compel USCIS to adjudicate his Form I-589. *Id.* at 1.

On January 21, 2025, Defendants filed a Motion to Dismiss, arguing that all claims should be dismissed pursuant to Federal Rules of Civil Procedure ("Rule") 12(b)(1) and 12(b)(6). ECF No. 12. The Magistrate Judge converted Defendants' motion into a Motion for Summary Judgment pursuant to Rule 12(d) because Defendants referenced and cited outside articles, letters, reports, and websites but failed to attach such items to the motion. ECF No. 17 at 1. On August 22, 2025, Magistrate Judge Jeffrey L. Cureton issued the FCR, recommending that Defendants' Motion be granted. ECF No. 24. Mahmoud objected to the FCR on September 8, 2025. ECF. No. 26.

## LEGAL STANDARD

### A. Reviewing a Magistrate Judge's FCR

A Magistrate Judge's findings, conclusions, and recommendations for a dispositive matter are reviewed *de novo* if a party timely objects. FED. R. CIV. P. 72(b)(3). The district court may then accept, reject, or modify the recommendations or findings in whole or in part. *Id.* The Court will not consider arguments raised for the first time in objections to the FCR. *See United States v. Armstrong*, 951 F.2d 626, 630 (5th Cir. 1992). When specific objections are filed as to part of the Magistrate Judge's findings, conclusions, and recommendation, then the Court reviews those parts *de novo*.

### B. Motion for Summary Judgment

Summary judgment is appropriate when "there is no genuine dispute as to any material fact" and the moving party "is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is "genuine" if the evidence presented would allow a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 242–43 (1986). A fact is "material" if it would affect the case's outcome. *Id.* at 248. Generally, the "substantive law will identify which facts are material," and "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Id.*

When determining whether summary judgment is appropriate, the Court views the evidence in the light most favorable to the nonmovant. *See First Am. Title Ins. Co. v. Cont'l Cas. Co.*, 709 F.3d 1170, 1173 (5th Cir. 2013). In conducting its evaluation, the Court may rely on any admissible evidence of record, but it need only consider those materials cited by the parties. FED. R. CIV. P. 56(c)(1)–(3). And the Court need not mine the record to find evidence to support the non-movant; the burden falls on the movant to simply show a lack of evidence supporting the nonmovant's case. *See Malacara v. Garber*, 353 F.3d 393, 404–05 (5th Cir. 2003).

**C. APA Claim**

The Immigration and Nationality Act ("INA"), sets forth a timetable under which asylum applications are to be adjudicated. *See Kizilyildirim v. Daum*, No 4:23-cv-03287, 2024 WL 1722277, at *1 (S.D. Tex. Mar. 29, 2024). However, the INA does not provide for a private right of action to enforce its timing procedures. *See Yildirim v. Mayorkas*, No. 4:23-CV-03983, 2025 WL 950086, at *2 (S.D. Tex. Mar. 28, 2025). For a private right of action, applicants must look to the Administrative Procedures Act ("APA").

The APA provides individuals the opportunity to seek judicial remedies if they are adversely affected by "agency action." See 5 U.S.C. § 702. The APA allows courts to compel agency action when the action has been "unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1); *see also* 5 U.S.C. § 555(b) (the APA mandates that an "agency shall proceed to conclude a matter presented to it" "within a reasonable time"). "But 'a claim under § 706(1) can proceed only where a plaintiff asserts that an agency [1] failed to take a *discrete* agency action that [2] it is *required to take.*'" *Li v. Jaddou*, No. 22-50756, 2023 WL 3431237, at *1 (5th Cir. Mar. 12, 2023) (per curiam) (unpublished) (quoting *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004)) (numbering in original).

Defendants have a nondiscretionary duty to adjudicate asylum applications within a reasonable time. *Kayihura v. Garland*, No. 3:24-CV-0367-D, 2024 WL 2868995, at *4 (N.D. Tex. June 6, 2024). In adjudicating asylum applications, USCIS utilizes the "last in, first out rule" ("LIFO"), which "is a capacity-based scheduling system" whereby

3

recently filed applications are scheduled for interviews before older cases. *Kizilyildirim*, 2024 WL 1722277, at *1

Determining whether an application has been unreasonably delayed is highly fact dependent. *Kolluri v. U.S. Citizenship & Immigr. Servs.*, No. 3:20-CV-02897-N, 2021 WL 183316, at *4 (N.D. Tex. Jan. 17, 2021). In analyzing such claims, courts often apply the factors set forth in *Telecomms. Resch. and Action Ctr. v. F.C.C.* ("*TRAC*"), 750 F.2d 70, 80 (D.C. Cir. 1984). While not adopted by the Fifth Circuit, "some courts within the Fifth Circuit have found 'the structure helpful to address' unreasonable delay claims under APA § 706(1)." *Kizilyildirim*, 2024 WL 1722277, at *6 (quoting *Mysaev v. United States Citizenship & Immigr. Servs.*, No. 3:22-CV-0371-B, 2022 WL 2805398, at *4 (N.D. Tex. July 18, 2022)). The *TRAC* factors ask the following:

(1) Whether the agency's timing is governed by a "rule of reason;"
(2) Whether Congress has provided a timetable;
(3) Whether the consequence of delay is economic, in which case delay is more tolerable than "when human health and welfare are at stake;"
(4) Whether expediting delayed action will affect other agency priorities;
(5) What interests will be prejudiced by delay; and
(6) Whether impropriety is behind the delay (though impropriety isn't required to find unreasonable delay).

*See Ahmed v. Bitter*, 727 F. Supp. 3d 630, 637-38 (S.D. Tex. 2024) (quoting *TRAC*, 750 F.2d at 79-80).

## ANALYSIS

### A. Review of Magistrate Judge's Recommendation

The Magistrate Judge entered an FCR recommending that the undersigned grant Defendants' Motion for Summary Judgment. ECF. No. 23. The Court adopts and accepts the reasoning in the Magistrate Judge's FCR and reviews Plaintiff's objections in the order they were raised.

### B. Plaintiff's Objections

Mahmoud raised numerous objections, all regarding the FCR's conclusion on the first *TRAC* factor—that LIFO is a "rule of reason." ECF No. 26. The crux of this factor is "whether there is any rhyme or

4

reason for the Government's delay—in other words, whether the agency's response time is governed by an identifiable rationale." *Cheng v. Garland*, No. 1:24-cv-03465 (JLR), 2024 WL 5009146, at *3 (S.D.N.Y. Dec. 6, 2024). Whether there is an identifiable rationale "turns in large part on the complexity of the task at hand, the significance (and permanence) of the outcome, and the resource available to the agency." *Id.* at *3 (holding that LIFO constitutes a "rule of reason" under this definition).

Mahmoud raised the following objections: (1) the FCR fails to address Plaintiff's allegations that undermine LIFO as a "rule of reason"; (2) the FCR misconstrues USCIS's stated rational for LIFO; (3) the Government's position, adopted by the FCR, is based on a fundamental contradiction; and (4) discovery in the form of at least a single deposition to properly evaluate the Government's "rule of reason" should be permitted. *See generally* ECF No. 26.

1. Plaintiff's allegations that undermine LIFO as a "Rule of Reason"

Mahmoud's first objection states that the FCR errs by failing to address allegations that contradict the government's claims about LIFO's efficacy and reasonableness. *Id.* at 5. Mahmoud claims that the following allegations are unrebutted: asylum seekers are unaware of LIFO, which discredits the argument that the policy deters frivolous claims; a lack of statistics exists demonstrating LIFO's effectiveness in decreasing the application backlog; USCIS's internal inefficiencies and resistance to technology are more to blame than the filing of frivolous applications; and USCIS's recent formalization of a policy that directly incentivizes the behavior LIFO is supposed to prevent (allowing applicants to waive their interview to be placed directly in removal proceeding). *See id.* at 5–7.

While Mahmoud characterizes this objection as relating to whether LIFO is a "rule of reason" under the unreasonable delay analysis, these objections, rather, relate to the implementation and efficacy of LIFO. Attacking the efficacy and implementation of LIFO fails to discredit whether the agency acted in accordance with an identifiable rationale. The "identifiable rationale" of LIFO "is to address the mounting backlog of pending asylum applications, not to create further delays." *Xu v. Cissna*, 434 F. Supp. 3d 43, 53 (S.D.N.Y. 2020). Mahmoud's allegations,

5

however, seek to have the Court order USCIS to hasten the adjudication of asylum applications. As the FCR correctly states, the Court lacks jurisdiction to review a claim of Defendant's *use* of LIFO as a policy because "[t]he APA does not give the courts the authority to compel the agency to change the method it uses to schedule and process asylum applications." *Ayana v. Jaddou*, No. CV H-23-2937, 2023 WL 8936700, at *3 (S.D. Tex. Dec. 27, 2023). Therefore, the Court lacks authority to compel an agency to "implement programmatic changes necessary to speed the processing of asylum applications." *Id.*

Many courts have concluded that LIFO "constitutes a rule of reason that satisfies the first TRAC factor." *Kizilyildirim*, 2024 WL 1722277, at *6 (quoting *Xu*, 434 F. Supp. 3d at 56); *see also Doe v. Dept. of Homeland Security*, No. 23-CV-2, 2024 WL 1603567, at *3-4 (E.D. La. Apr. 12, 2024) (agreeing with other courts that LIFO is a rule of reason); *Lajin v. Radel*, 2019 WL 3388363, at *3 (S.D. Cal. July 26, 2019) ("Moreover, the last in, first out policy sets forth a "rule of reason" for the adjudication of asylum applications."); *Yueliang Zhang v. Wolf*, 2020 WL 5878255, at *5 (E.D.N.Y. Sept. 30, 2020) ("These precedents, and the record of which the Court takes judicial notice, support a finding that the adjudication of asylum applications pursuant to LIFO is governed by a 'rule of reason.'"). Mahmoud provided no authority to the contrary.

Having reviewed these authorities and the record in this case, the Court agrees that LIFO constitutes a "rule of reason." Accordingly, Mahmoud's objections to LIFO being a "rule of reason" based on its implementation and efficacy are **OVERRULED**.

2. <u>Rationale of LIFO</u>

Mahmoud next objects to the FCR on the basis that it misstates the purpose of LIFO as "identifying frivolous or fraudulent applications." ECF No. 26 at 7. Mahmoud contends that "USCIS has never claimed that LIFO is a tool to identify fraudulent claims," but rather LIFO exists only to reduce or deter such applications. *Id.* Mahmoud further states that this distinction is "outcome-determinative" regarding whether LIFO is a "rule of reason" because identifying fraud "would serve a legitimate administrative function" but mere deterrence would not. *Id.*

However, Mahmoud's objection is without merit. Defendants' Motion states that USCIS implemented LIFO "[t]o stem the growth of the

backlog and to *identify* non-meritorious asylum claims sooner." ECF No. 12 at 10 (emphasis added). Furthermore, the Motion cites a USCIS press release from 2018 stating the same. USCIS, Press Release, *USCIS to Take Action to Address Asylum Backlog* (Jan. 31, 2018), https://www.uscis.gov/archive/uscis-to-take-action-to-address-asylum-backlog ("Returning to a 'last in, first out' interview schedule will allow USCIS to *identify* frivolous, fraudulent or otherwise non-meritorious asylum claims earlier and place those individuals into removal proceedings.") (emphasis added).

Accordingly, Mahmoud's objection regarding the FCR's characterization of LIFO's purpose is **OVERRULED**.

3. Contradiction

Mahmoud's third objection rests upon the premise that Defendants' argument, adopted by the FCR, is fundamentally contradictory. ECF No. 26 at 8. According to Mahmoud, it is contradictory for the Defendants to claim that fast adjudication under LIFO is a "rule of reason" because it identifies and deters frivolous applications but also contend that Mahmoud's application has not been unreasonably delayed. *Id.* Mahmoud asserts that this alleged contradiction is further proof that LIFO is not a "rule of reason." *Id.*

This is not so. The "rule of reason" analysis turns on "whether there is any rhyme or reason for the Government's delay." *Cheng*, 2024 WL 5009146, at *3. LIFO's purpose "is to address the mounting backlog of pending asylum applications, not to create further delays." *Xu*, 434 F. Supp. 3d at 53. While earlier applicants may bear the brunt of delays created by the policy, "this is a byproduct of a reasoned attempt to address mounting issues with the asylum application process." *Id.* Thus, while the Court is sympathetic to the delay in the adjudication of Mahmoud's application, such delay does not render LIFO's purpose as contradictory, and, thus, not a "rule of reason."

Therefore, Mahmoud's objection pertaining to a purported contradiction is **OVERRULED**.

4. Limited Discovery

Mahmoud's last objection is to the FCR's characterization that his request for discovery amounts to a "fishing expedition." ECF No. 26 at 8–9. Mahmoud argues that the Court cannot properly weigh the *TRAC*

7

factors without an evidentiary record which allows Plaintiff the opportunity to inquire into the allegations that cast doubt on LIFO constituting a "rule of reason." *Id.* at 9.

Under Rule 56, discovery need not take place before summary judgment can be granted. *Washington v. Allstate Ins. Co.*, 901 F.2d 1281, 1285 (5th Cir. 1990) (collecting cases). To obtain a Rule 56(d) continuance, "the nonmovant must 'present specific facts explaining his inability to make a substantive response . . . and specifically demonstrate[e] how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact.'" *Shelton v. Lemons*, 486 F. App'x 395, 397 (5th Cir. 2012) (citing *Washington*, 901 F.2d at 1285 (construing former Rule 56(f))).

Here, Mahmoud contends that he "made concrete, verifiable allegations in his Complaint that directly contradict USCIS's public statements" but fails to specify which allegations would be illuminated by discovery. ECF No. 26 at 9. He thus seeks at least one deposition of a USCIS official with knowledge of the LIFO policy to investigate the "concrete allegations" in the Complaint. *Id.* Mahmoud failed, however, to identify which allegations he seeks to elucidate with discovery. Parties objecting to an FCR "must specifically identify those findings objected to." *Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 410 n. 8 (5th Cir. 1982) (en banc). "Frivolous, conclusive or general objections need not be considered by the district court." *Id.* The Court does not have a duty to "sift through the record in search of evidence to support a party's opposition to summary judgment" and refuses to do so here. *Malacara*, 353 F.3d at 405. There also exists "a strong presumption against supplementing the administrative record or conducting extra-record discovery in APA cases." *Mazher v. Rubio*, No. 4:25-CV-017-P, 2025 WL 2471789, at *11 n. 10 (N.D. Tex. Aug. 11, 2025), *report & recommendation adopted*, No. 4:25-CV-00017-P, 2025 WL 2468205 (N.D. Tex. Aug. 27, 2025) (quoting *Ahmed*, 727 F. Supp. 3d at 640).

Because Mahmoud not only failed to make a showing that overcomes the presumption against supplementing the administrative record but also failed to identify which allegations he found to be unrebutted, the

Court concludes that discovery would result in a fishing expedition of which no material facts are likely to be garnered. Furthermore, the Court is satisfied with the ample case law, discussed above, analyzing and concluding that LIFO constitutes a "rule of reason."

Mahmoud's final objection is **OVERRULED**.

## CONCLUSION

Having conducted a *de novo* review of the Magistrate Judge's FCR, Plaintiff's Objections, and Defendants' Response, the Court **ADOPTS** the reasoning in the Magistrate Judge's FCR and **OVERRULES** Plaintiff's Objection. Accordingly, Defendants' Motion is **GRANTED** and the claims against Defendants are hereby **DISMISSED with prejudice**.

**SO ORDERED** on this **22nd day** of **September 2025.**

**MARK T. PITTMAN**
UNITED STATES DISTRICT JUDGE